Argued April 28, reversed June 2, 1975

TIERNEY ET AL, *Respondents, v.*
DURIS ET AL (Nos. 33-834 and 33-943), *Defendants,*
PAY LESS PROPERTIES CORPORATION,
*Appellant.*
536 P2d 435

See also Or App, 536 P2d 431.

*Robert J. Miller,* Portland, argued the cause for appellant. With him on the briefs were J. D. Bailey, and Schwenn, Bradley, Batchelor & Bailey, Hillsboro; and Black, Kendall, Tremaine, Booth & Higgins, Portland.

*Thomas J. Moore,* Hillsboro, argued the cause for respondents. With him on the brief were Brink and Moore; and David G. Frost, Hillsboro.

Before SCHWAB, Chief Judge, and LANGTRY and TONGUE, Judges.

SCHWAB, C. J.

Defendant Pay Less Properties Corporation appeals from decisions in two writ of review cases, involving the same parties and the same property, that were consolidated for trial and are now consolidated on appeal.[1] The subject of the first case is an amendment to the Hillsboro comprehensive plan. The subject of the second case is an amendment to the Hillsboro zoning ordinance. Plaintiffs, residents of Hillsboro, challenge both amendments, and in the process invoke virtually every aspect of the *Fasano*[2] decision. The circuit court resolved all issues in plaintiffs' favor, setting aside the plan-change and zone-change decisions of the city council. We reverse and reinstate the determinations of the city council.

The significant questions involve the extent of the authority of a local government to amend its comprehensive land-use plan, the sufficiency of the city council's findings of fact, whether the land-use decisions in question are supported by substantial evidence, and whether the decisions are tainted by improper ex parte contacts.

[1] Other defendants, the members of the Hillsboro city council, also attempted to appeal, but we determined that their appeal was not timely. Tierney v. Duris, 21 Or App 604, 536 P2d 431 (decided this date). But whereas the real parties in interest, the plaintiffs and the defendant Pay Less Properties Corporation, are still parties to this appeal, we now proceed to consideration of the merits.

[2] Fasano v. Washington Co. Comm., 264 Or 574, 507 P2d 23 (1973).

The property in question is located on the Tualatin Valley Highway in Hillsboro. Before the changes here in question, property fronting on the Tualatin Valley Highway was zoned commercial to a depth of 200 feet. The property behind the commercial zone, i.e., more than 200 feet from the highway, was zoned residential. Defendant, interested in constructing a shopping center that would extend to a depth of more than 200 feet from the highway, sought changes that would rezone about eight acres of property from residential to commercial.

The single question of what would be the future permitted use of eight acres of property was determined by city officials by way of what seems to have been needlessly cumbersome procedures. First, defendant applied to the city planning commission for an amendment to the comprehensive plan. The planning commission held a full evidentiary hearing, and recommended that the amendment be approved. Second, the plan-change question was submitted to the city council. After another full evidentiary hearing, the plan change was approved by the council. Third, defendant then applied to the planning commission for a zone change. Yet another evidentiary hearing was held, resulting in the commission's recommending the change be approved. Fourth, the zone-change question was taken to the city council. After yet another evidentiary hearing, the zone change was approved by the council.

In short, the question of what would be the permitted use of eight acres has been the subject of four separate proceedings before city officials. Some witnesses have presented the same evidence in all four proceedings.

■ Although local governments are free to choose to follow such procedures, the law does not require that every individual land-use determination consume so

much governmental time. An amendment to a comprehensive plan and an amendment to a zoning ordinance that both affect an individual piece of property can be considered simultaneously in a single proceeding. *See, Duddles v. City Council of West Linn,* 21 Or App 310, 535 P2d 583 (1975); *Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372 (1975). And it is not essential that there be full evidentiary hearings before both the planning commission and the city council, provided a full record is made in the first forum for review in the second forum. *See, West v. City of Astoria,* 18 Or App 212, 524 P2d 1216 (1974).

I. Authority to amend a comprehensive plan.

We first consider the questions relating solely to the change in the comprehensive plan. *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and especially *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), emphasize the important role of comprehensive plans in local land-use decisions. Neither opinion considers the question of the extent of a local government's authority to amend its comprehensive plan.

Plaintiffs seem to take a variety of positions on the extent of such authority. At some points, plaintiffs seem to contend none exists. At other points, plaintiffs argue a local government is powerless to amend a comprehensive plan as it relates to a single, individual piece of property. The trial court adopted the latter position, concluding, "Spot planning as such is no less to be condemned than spot zoning."

■ It is not completely clear that the comprehensive plan has been actually *changed* in this case. The Hillsboro comprehensive plan consists of both text and map. The text provides in part:

"That strips of mixed commercial and residential development along major thoroughfares will be

avoided. Where commercial development exists or is unavoidable, provision will be made for deep building setbacks and frontage roads wherever possible."

The comprehensive plan map shows commercial development on the Tualatin Valley Highway generally limited to a strip 200 feet deep. The chairman of the planning commission, apparently one of the draftsmen of the comprehensive plan, explained that the 200-foot commercial strip was retained in the plan *map* even though the plan *text* disapproved of such strips merely because that was the nature of the existing zoning when the plan was adopted. In other words, the plan text and plan map were originally inadvertently inconsistent. Amending the plan map to deepen the commercial zone, as contemplated by the plan text, eliminates the inconsistency; arguably, it does not involve any fundamental change in the comprehensive plan.

■ But even assuming the present amendment to the comprehensive plan was a substantial change, we nevertheless believe the city council was authorized to adopt it. First, we note that the Hillsboro comprehensive plan itself contemplates the possible need for amendments:

"* * * * *

"The plan is designed for change. The Text and Map can be amended or added to whenever desired.

"* * * * *

"The plan will be responsive to changing circumstances, needs, public desires, more precise information. If the Plan is amended and improved whenever warranted, it will become more useful, relevant and effective as the years go by.

"* * * * *

"Changes in the Plan may become necessary because of the following kinds of situations:

"A. New economic factors such as those which

accompanied the establishment of the electronics industry in Washington County.

"B. New or unanticipated developments in transportation such as new mass transit facilities.

"C. Changes in zone boundaries which meet Plan objectives.

"D. Special studies or plans for refinement of some major Plan element, such as downtown, airport, fairgrounds.

"E. Changes in plans by other agencies such as Washington County, State Highway Department, nearby city.

"F. Suggestions for change by interested individuals or groups.

"G. Regular review and evaluation of Plan to keep it current.

"H. Changes in Council or Planning Commission membership which result in differing purposes concerning city growth."

■ And even if this language were not in the plan, we see no virtue to a rule that would prohibit comprehensive plan changes. While we need not here decide the ultimate limits of authority to make such changes, at the least changes would appear permissible when the original plan was in error, or there has been a change in the community, or there has been a change in policy, such as could be produced by city and county election results.

■ Nor do we think it is of any significance, on the question of authority to amend, whether the change, as in this case, affects only a single piece of property. Any change in the comprehensive plan or zoning ordinance that affects a single piece of property requires a *Fasano*-type hearing. *Marggi v. Ruecker,* supra. The protection for those who, like the plaintiffs in this case, oppose a change is to be found in the *Fasano* procedures; it is not to be found in a holding that individual plan changes are impossible.

II. Sufficiency of the findings.

■ *Fasano* requires that changes affecting individual pieces of property be supported by adequate findings of fact. 264 Or at 588. The next issue is whether the findings in this case are adequate.

On June 19, 1973 the city council approved the challenged plan change. On August 7 the council approved the challenged zone change. On August 17 plaintiffs initiated these writ of review proceedings. On September 18, after these proceedings had been commenced, the city council adopted supplemental findings relevant to the June 19 plan-change decision.

The June 19 plan-change decision recited findings and recommendations previously made by the planning commission:

"(1) This request complies with Policy #2 of the Commercial Land Use category of the Hillsboro Comprehensive Plan wherein it states that strips of commercial development along major thoroughfares will be avoided. The applicant intends to alleviate this strip commercial effect by including additional land to the rear of the existing commercial strip which would result in a more desirable commercial core configuration.

"(2) The public interest can best be served by the change since it would result in the removal of commercial uses such as Tire City, Kenco Roofing and Stuck's Tavern. These uses have continued to deteriorate through the years despite efforts by the city to have property owners of Tire City and Kenco Roofing improve their properties. Public interest will also be served by the change since it would result in changing approximately 8 acres of land zoned R-7 Single Family Residential to Commercial. Eight acres of R-7 land could provide up to 32 single family dwellings and these 32 dwellings could provide 32 to 55 additional students to nearby Walter Henry Grade School.

"(3) There is an actual, demonstrable public need for the change since such a change would result in a commercial center which will have the capability of providing a wider variety of goods and services which, at the present time, are available only in neighboring communities."

The September 18 supplemental findings state:

"* * * * *

"WHEREAS, Resolution 761-6-73, though it set out in full the findings of the Planning Commission, failed to recite that the City Council concurred in those findings and failed to recite any other findings, either consistent or inconsistent with the findings of the Planning Commission, and,

"WHEREAS, it was and continues to be the intention of the City Council to have its concurrence in the findings of the Planning Commission recorded as a part of the proceeding by which the Comprehensive Plan has been changed, and to correct an oversight in the record,

"NOW, THEREFORE, BE IT HEREBY RESOLVED by the City Council of the City of Hillsboro:

"That by this resolution the City Council of the City of Hillsboro acknowledges that at the time of the passage of Resolution No. 761-6-73 the Council concurred in and intended to be recorded as concurring in the findings of the Planning Commission of the City of Hillsboro as recited in Resolution No. 761-6-73, and to adopt those findings as its own * * *.

"* * * * *"

The only findings in the August 7 zone-change decision read:

"(1) The proposed zone change is in conformance with the Hillsboro Comprehensive Plan.

"(2) The public interest can best be served by approval of the requested change.

"(3) A public need for the change does exist."

The circuit court held all of these findings to be insufficient. As to the June 19 and September 18 plan-change findings, the court reasoned:

"There were no findings of facts made by the City to support such change. The attempt to attach findings some ninety days following the enactment was void for the reason (a) that making of such findings are necessary to the enactment and a void enactment cannot be resuscitated by later attempting to make such findings, and (b) the findings so adopted were mere generalizations and conclusions without any statement of facts on which they were based."

As to the August 7 zone-change findings, the circuit court reasoned:

"The purported findings of fact are not findings of fact but mere conclusions unsupported by findings of fact * * *."

We find ourselves in general disagreement with the circuit court. We perceive no basis for concluding the city council could not, on September 18, adopt supplemental findings relevant to the plan change especially when: (1) that was before the date set for filing the return to the writ of review; and (2) the supplemental findings merely make explicit what was previously implicit—that the city council was adopting the findings of the planning commission. Courts, long familiar with the entry of nunc pro tunc orders and judgments, should not lightly deny a similar prerogative to other branches of government.

Nor can we agree that the June 19 and September 18 findings in support of the plan change are "mere generalizations." In *Home Plate, Inc. v. OLCC*, 20 Or App 188, 530 P2d 862 (1975), we stated that administrative findings of fact should

indicate what were found to be the facts, and why those facts led the agency to the decision it made. Here the city council indicated what were found to be the facts —the proposed use would concentrate commercial development rather than create strip development, would replace deteriorating existing uses, and would provide goods and services needed in the neighborhood. And the council indicated those facts persuaded it that the advantages of concentrated commercial development, etc., outweighed the disadvantages of extending commercial development into a previously residential area. The plan-change findings were sufficient.

■ The zone-change findings present a closer question. As the trial court noted, they "are not findings of fact but mere conclusions." In fact, they are nothing more than conclusions apparently taken word-for-word from the *Fasano* decision. Such conclusions, standing alone, are insufficient to support a decision to change zoning applicable to specific property. *Cf., Dickinson v. Bd. of County Comm.,* 21 Or App 98, 533 P2d 1395 (1975).

■ But we do not think these "findings" must be read in a vacuum. As noted above, the various proceedings leading to the land-use decisions here challenged were really one transaction, although needlessly split into several component parts. The city council listened to substantially, if not exactly, the same evidence before approving the plan change in June and before approving the zone change in August. The arguments for and against both proposed changes were the same. Under these circumstances, we conclude that the city council necessarily must have made its zone-change decision on the same basis as it previously made its plan-change decision. Therefore, it seems appropriate on these facts to read the zone-change findings together with the plan-change findings. Read together, the zone-change findings are sufficient.

We reiterate, however, that the present zone-change findings are not sufficient, standing alone, to support a zone change.

III. Substantial evidence.

■ Plaintiffs contend that we should "evaluate the evidence presented in the proceedings before the" city council, apparently meaning that we should make an independent determination about the desirability of the plan change and zone change in question. We rejected that contention regarding the scope of review in *Dickinson v. Bd. of County Comm.,* supra. Instead, we only review the record to ascertain whether the findings are "supported by reliable, probative and substantial evidence." ORS 34.040(3).

■ There is substantial evidence to support the present changes. There is evidence that the proposed commercial development was needed, and according to survey results, wanted by a majority of Hillsboro residents; that the proposed development complied with all comprehensive plan guidelines regarding traffic, parking, pedestrian safety, etc.; that the proposed use would have only two entrances to the highway, an improvement over the existing uses with seven entrances; and that there was not other suitable land in the community for commercial development. There was, admittedly, conflicting evidence on some points—especially the other-suitable-land question. Resolution of the conflicting evidence was for the city council, not the courts.

■ Plaintiffs complain that there is absolutely no evidence that the changes would not substantially injure them. No such evidence is required. The city council's responsibility was to weigh the advantages and disadvantages of the proposed changes and determine what decision was in the public interest. Private

interests, of either the proponents or opponents of change, are not controlling.

IV. Ex parte contacts.

*Fasano* holds that parties to a quasi-judicial land-use hearing "are entitled to * * * a tribunal which is impartial in the matter, i.e., having had no pre-hearing or ex parte contacts concerning the question at issue." 264 Or at 588. The final question is whether the city council violated this rule.

The city council hearing on the comprehensive plan change began on June 5, 1973. At that time defendants presented a market and economic survey indicating a need for more shopping facilities in Hillsboro, but certain remonstrators, including the plaintiffs, questioned the validity of the survey results. When the hearing resumed on June 19, one councilman stated:

"* * * '[T]hey [the remonstrators] were asking us to verify this study that Payless made and in a small way, maybe in a small way, but I spent a couple of afternoons to knock on about 25 doors just in the Ward where I live and talked to about 20 people there, and if people came into the office this week I talked to another 21. I didn't write their names or addresses, just the streets they lived on. They varied from Connell Street to Bentley Orchard, to North Plains to Forest Grove to Arrington, to Oleander and out of 42 people that I talked to I got 2 that were opposed, which gave me a pretty good sample of the area. Also there was some comment made as to how it would affect the downtown businesses. I talked to 4 businessmen downtown and didn't get a negative answer. None of them were opposed, and as far as the Highway Commission is concerned out there on the Highway that there is a lot of study done on the T.V. Highway when preparations for the stop light that is being put up out there now. In this particular area one of the things the Highway Commission looks at is

that they will look favorably on that, because we are decreasing, nine driveways into that property down to 2 which will allow control of traffic.' "

Another councilman stated:

"* * * 'Mr. Mayor, I also took it upon myself questioning the validity of the number of people that were actually leaving the City of Hillsboro, going elsewhere for shopping, and also questioned the feeling of the downtown merchants, what their feeling was in regard to having a Payless Store in Hillsboro, or that it might set a trend. After knocking on or approximately talking to 20 people, I didn't find anyone that would really object to the development itself, and what came as perhaps a greater surprise to myself, was a visit to a local Chamber of Commerce where I expected there would be some activity from the merchants downtown. Perhaps there was some mixed feelings both ways, but there was no opposition to the store coming in to our community, so I could really find no reason for' [denying the change]."

The circuit court held the actions of these two councilmen—elected public officials talking to their constituents—to be prohibited ex parte contacts within the meaning of the *Fasano* rule. We disagree.

The exact basis of this aspect of *Fasano* is not clear. To the extent that it is based on federal constitutional due-process standards, it might no longer be viable in light of the subsequent decision in *Withrow v. Larkin,* 421 US 35, 95 S Ct 1456, 43 L Ed 2d 712 (1975), in which the court held that ex parte contacts are not per se due-process violations:

"* * * The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing. Without a showing to the contrary, state administrators, 'are assumed to be men of conscience and

intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v. Morgan,* 313 US 409, 421 (1941)." 421 US at 56.

■ In any event, we hold there is no violation of *Fasano* when, as in this case: (1) the "ex parte contracts" were not with the proponents of change or their agents, but, rather, with relatively disinterested persons; (2) the contacts only amounted to an investigation of the merits or demerits of a proposed change; and, most importantly, (3) the occurrence and nature of the contacts were made a matter of record during a quasi-judicial hearing so that parties to the hearing then had an opportunity to respond. *See, West v. City of Astoria,* supra, (concurring opinion). As we read *Fasano* its basic requirement is an impartial tribunal; ex parte contacts were just mentioned as one way in which impartiality could be compromised. We conclude that the ex parte contacts revealed by this record are, in the absence of any other claim or evidence of bias, insufficient to establish a lack of impartiality. *Withrow v. Larkin,* supra.

Reversed.

TONGUE, J., pro tempore, specially concurring.

I concur in the result of the decision by the majority, but solely on the basis of its holding that the map attached to the comprehensive plan was inconsistent with the text of the comprehensive plan; that the text of the plan is controlling; and that it was therefore proper to amend the plan map to deepen the commercial zone, as contemplated by the plan text, in order to eliminate that inconsistency. I also agree with the holding by the majority that under the circumstances of this case that decision by the city council was not invalidated by the so-called "ex parte contacts."