Argued March 19, affirmed June 2, 1975

SOUTH CENTRAL ASSOCIATION OF
NEIGHBORS ET AL, *Respondents, v.*
LINDSEY ET AL, *Defendants,* DONOFRIO ET AL,
*Appellants.*
535 P2d 1381

*Asa L. Lewelling,* Salem, argued the cause for appellants. With him on the brief was Lawrence N. Brown, Salem.

*M. Chapin Milbank,* Salem, argued the cause and filed the brief for respondents.

Before FOLEY, Presiding Judge, and FORT and THORNTON, Judges.

FORT, J.

This writ of review proceeding involves an appeal by defendants from the decision of the circuit court reversing the action of the Salem City Council in passing a zoning ordinance which changed the

zoning designation of defendants' property from RS (Single Family Residential) to CR (Commercial Retail).

The attempted zone change was initiated by the defendants, who are proprietors of Skyline Ford, an automobile dealership located on the east side of South Commercial Street in Salem. The property in question lies behind the land currently occupied by Skyline Ford, and is separated from the dealership only by an alley. It is a small piece of property and consists of some lots now zoned residential which border East Nob Hill Street on the west and lie between Ohmart Street on the south and McGilchrist Street on the north. Directly across East Nob Hill Street lies an elementary school, and another automobile dealership lies directly to the south. Defendants wish to expand their operation by using the property in question as a parking and storage lot, and petitioned the city council to change the zoning designation from RS to CR for commercial purposes. After holding two public hearings and receiving a report unfavorable to the proposed change from the Salem Planning Commission, the city council by a four-to-three vote allowed the proposed change by the challenged ordinance. The circuit court reversed the decision of the city council, stating, without elaboration, that the proposed change did not conform to the city's comprehensive plan (*see: Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975)), and no public need for the change had been shown. The owners of the property appeal from the decision. The City of Salem did not appeal, and was not represented in this court.

■ Our review is not de novo; rather, it is limited to a consideration of whether the proper procedures were followed, the appropriate factors considered, and whether there was relevant, substantial and probative evidence to support the decision of the agency. *Dick-*

*inson v. Bd. of County Comm.,* 21 Or App 98, 533 P2d 1395 (1975).

■ It is clear that the action here of the city council in passing the zoning ordinance was quasi-judicial, rather than legislative, in nature. *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973).

The city ordinance here recited the following "findings":

"(1) The petitioners, Don and Katherine Donofrio and U. S. National Bank, as trustee, filed a good and sufficient petition for reclassification of premises in Section 1 hereof from RS Single Family Residential to CR Commercial Retail district;

"(2) Mr. Donofrio owns and operates Skyline Ford located in a CR district and adjacent to and east of Commercial Street, a major arterial, and west of the subject property but separated by a narrow alley. Upon the subject property are located several single family dwellings, all in disrepair;

"(3) The comprehensive plan of the City of Salem adopted March 12, 1973, indicates that Commercial establishments should be encouraged in concentrated clusters along major arterial streets with limited access; that with respect to residential development, the goal is to assure that residential areas are healthful, pleasant and safe places; the policy, among other things, is to avoid excessive traffic volume, noise and conserve existing residential areas.

"(4) The comprehensive plan further indicates future extension of an arterial system known as the proposed Liberty-Commercial couplet adjacent to the subject property. The land use map shows the area lying between Commercial Street and the extension of the Liberty Street portion of the couplet as modified commercial.

"Teague Motors, a competing automobile dealership, lies to the South of the Skyline Ford property between Commercial and East Nob Hill.

"(5) The petitioners require the zone change in order to expand the existing business and remain competitive at its present location thus benefiting the community and its economy.

"(6) East Nob Hill at the location in question provides a more reasonable division (than the alley) between a residential and commercial district, taking into consideration the existing location of Skyline Ford, the development of Teague Motors to the south, and the proposed Liberty-Commercial couplet, described herein; further, East Nob Hill is a logical transition point from Commercial to residential uses even if the Liberty-Commercial couplet now under study was never constructed.

"(7) The impact of the proposed zone change (with restrictions) on the residential character of the area lying East of Nob Hill and the McKinley School District property will be slight, if any.

"All other properties outside the existing commercial zones are developed with single-family dwellings on individual lots except the school property which contains the school and the playgrounds.

"The proposed zone change with conditions attached prevents a depreciation of property values to the adjacent neighborhood, thus the neighborhood environment will not break down; nor will this zone change produce an undesirable pattern of development in the area. The living quality of the neighborhood will remain intact.

"(8) The existing generalized land use map found in the comprehensive plan is still valid. Although there is other commercial land in the area, fragmenting an existing automobile business does not facilitate the clustering of automobile dealers in one area. Fragmentation also would require more

street access points along a major arterial for the movement of petitioners product which should be discouraged.

"(9) The petitioner has declared that the property in question will be used only for the parking and storing of motor vehicles.

"(10) The proposed zone change will lead to the reduction of the number of on-street parking of motor vehicles.

"(11) In reaching its decision, the council gave careful consideration to all relevant factors relating to the preservation of the public health, safety and general welfare including the character of the area, the suitability for particular uses, the conservation of property values and the direction of building development.

"(12) The proposed zone change with certain conditions and restrictions set forth below is in conformance and consistent with the comprehensive plan including the goal and policies of residential and commercial districts.

"(13) A public need for the proposed zone change has been established and this public need will be best served by granting this change as compared with other available property.

"(14) The granting of the proposed zone change is in the public interest, convenience and general welfare of the community."

■ Many of these, particularly numbers 6, 7, 8, 13 and 14, are general in nature, stating only the conclusions which the city council drew from the evidence without reference to any of the underlying facts on which the council based its decision. These are the types of statements which are in violation of *Fasano,* when it said:

"Such generalizations and conclusions, without any statement of the facts on which they are based, are insufficient to justify a change of use. * * *" 264 Or at 589.

*See also*: *Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 536 P2d 435, Sup Ct *review denied* (1975).

■■ Findings such as the council's here require the court to search the record to determine what evidence, if any, they are based on. A statement of the facts on which the city council is relying in reaching its conclusions is required by *Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975). Such findings aid the court in determining what evidence the council believed, and whether its conclusion was supported by reliable, probative and substantial evidence, as is required by *Dickinson.*

However, we need not in this case decide whether the findings as a whole are fatally defective because of their conclusory nature, since it is clear that there is no reliable, probative and substantial evidence in the record to support some of the essential findings.

■ *Fasano* requires the party seeking a zoning change to show that the proposed change is required by public need. There the court stated:

"Because the action of the commission in this instance is an exercise of judicial authority, the burden of proof should be placed, as is usual in judicial proceedings, upon the one seeking change. The more drastic the change, the greater will be the burden of showing that it is in conformance with the comprehensive plan as implemented by the ordinance, that there is a public need for the kind of change in question, and that the need is best met by the proposal under consideration. As the degree of change increases, the burden of showing that the potential impact upon the area in question was carefully considered and weighed will also increase. If other areas have previously been designated for the particular type of development, it must be shown why it is necessary to introduce it into an area not previously contemplated and why the property owners there should bear the burden

of the departure." (Footnote omitted.) 264 Or at 586.

■ In this case there is no substantial evidence in the record that the proposed change will satisfy any public need.[1] Finding 5 states that Skyline Ford needs the expanded area to "remain competitive at its present location." Assuming that this could be sufficient to support a finding of public need, there is nothing in the record to support this statement. The only other findings which deal with public need are findings 10 and 13. Finding 10 merely states that turning the property in question into a parking lot will reduce the amount of on-street parking. Such a finding, without more, is not sufficient to justify the proposed zone change. Finding 13 merely states the conclusion of the city council. Since it gives no basis for this statement, it is difficult for us to determine what, if any, evidence the city council was relying on. However, we found no substantial evidence in the record to support this conclusion.

■ Not only is the burden of proof in proceedings such as the one at bar on the one seeking the zoning change, but the burden increases as the degree of change increases. *Fasano,* 264 Or at 586. In this case the defendants presented only the testimony of their attorney at the hearings before the city council, and this testimony contained insufficient evidence on the issue of public need.[2]

---

[1] Accordingly, we do not consider plaintiffs' argument that Skyline Ford's "private need" for the zoning change is insufficient to support a finding that public need required the rezoning. Such a statement is wholly conclusory.

[2] This situation is unlike the one present in Tierney v. Duris, Pay Less Properties, 21 Or App 613, 536 P2d 435, Sup Ct *review denied* (1975), where the proceedings before the planning commission were part of the record, and the findings of the planning commission were adopted by the city council. However, we do not here have before us a record of the proceedings before the Salem Planning Commission, nor was any such

Since defendants failed to present sufficient evidence to establish a public need for this zoning change, it follows that the judgment below must be affirmed.

Affirmed.

---

record officially before the city council when it was deciding whether to grant the requested rezoning. The planning commission made no findings in this case.