Argued July 21, reversed and remanded December 26, 1978,
reconsideration denied January 30, Supreme Court review
denied May 9, 1979

## POLIZOS et al, *Petitioners,*

*v.*

## OREGON LIQUOR CONTROL COMMISSION, *Respondent.*

(CA 10538)

588 P2d 681

Leslie M. Roberts, Portland, argued the cause for petitioners. With her on the brief was Kell, Alterman & Runstein, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Petitioners appeal a denial by the OLCC of their application for a Class A distributor's license, contending that the order is deficient because the findings of fact are not supported by substantial evidence and the conclusions of law are unsupported by statute, rule or reason.

## The Findings

The Commission made these findings of fact:

"1. The Polizos brothers are applying for a Class 'A' dispenser license (DA) in the trade name 'Acropolis Club'. Applicants own two other outlets with the same trade name with a Commission license to serve beer and wine.

"2. Applicants claim they will specialize in Greek cuisine. However, it is clear that they will primarily serve typical restaurant fare with an extremely limited Greek menu, the ingredients of which will be purchased totally on a commercial basis. The Greek food will, in effect, be 'pseudo', i.e., in name only.

"3. The design and decor of the present and proposed premises bar, lounge and restaurant are designed more to emphasize entertainment and the sale of liquor and not of a specialty Greek restaurant intended to serve metropolitan Portland and emphasizing and oriented to fine Greek dining.

"4. At the time of this hearing, the Commission had a reserve of only eighteen (18) licenses to serve the whole State of Oregon with approximately 79 applications pending for said 18 licenses.

"5. It is not in the public interest to grant a DA license to applicants for the primary purpose of providing entertainment and increasing liquor sales, and who serve an extremely limited specialty menu which will not create a public demand within nor serve the residents of the Portland metropolitan area.

"6. It is in the public interest to reserve the limited number of licenses available for outlets which desire to serve a larger segment of the family dining public than does applicant."

[ 759 ]

It also made this ultimate finding of fact:

"It is not in the public interest to license an applicant who will not, as claimed, specialize in Greek food, but routine restaurant fare with a few Greek food items, and will be oriented toward selling liquor rather than family dining."

Finding No. 1 is not challenged.

Finding No. 2 is supported at least by the petitioners' menu. It begins with one Greek and one or two non-ethnic appetizers, soups and salads. There follows an ordinary array of non-Greek beverages. The four entrees are souvlakia (as a changing daily offering), spaghetti with Greek style meat sauce, T-bone steak and fried shrimp. Four sandwiches are listed: ham and cheese, salami, pastrami, and hamburger with fries. Dessert offerings are baklava or ice cream. Finding No. 2 is overstated in that there is no evidence that the purported Greek food will not be Greek food and the adverb "extremely" is excessive. Nevertheless, the menu is substantial evidence that petitioners will serve typical restaurant fare with limited rather than predominant Greek fare. Also, there is evidence that petitioners will purchase food ingredients "on a commercial basis," although the significance of that finding is not made apparent. Thus, the thrust of the finding is supported, but the specifics of the finding go beyond any substantiating evidence.

The evidence regarding Finding No. 3 is mixed. The finding that the primary function of the facility will be entertainment rather than dining is an inference rather than a directly proved fact. There is evidence in the record which might support findings of fact which would in turn support the inference, but the order reflects no such findings. Rather, it purports to support the inference only with a bald reference to the "design and decor of the present and proposed premises." Such an inferential finding without an expression of the facts giving rise to the inference is insufficient, *Cottrell v. OLCC,* 27 Or App 525, 556 P2d

982 (1976). Again, the thrust of the finding may have support in the record, but the justifying facts do not.

We uphold Finding No. 4 for reasons which do not require discussion.

Findings Nos. 5 and 6, though listed as facts, are inferential reasoning in support of Conclusion No. 3 discussed below.

Because the evidentiary support for the findings is so mixed and remand for proper findings is required, it is also appropriate to consider the conclusions of law.

### The Conclusions

The order states these conclusions of law:

"1. The Commission has considered Rule 845-10-720(2) and concludes that the type of food to be offered is not demanded by public interest or convenience, in that it is typical restaurant fare with a limited specialty menu.

"2. The Commission has considered Rule 845-10-720(3) and concludes that the size, design, facilities and decor of the outlet is not demanded by public interest or convenience, in that it is intended to promote entertainment and liquor sales and not family dining.

"3. The Commission has considered Rule 845-10-715(10) and concludes that with the limited number of licenses it has available, it would not be in the public interest to grant a license to applicant with a proposed limited menu and ordinary food items, but reserve the available licenses for an outlet which would serve a greater segment of the public."

■ Boiled down, the essential rationale of the conclusions is a policy judgment that the limited number of available licenses should be granted only to outlets designed for family dining rather than entertainment. We will uphold an order based on that rationale if, under the rules of administrative procedure compiled in *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976) *rev den* (1977), the underlying policy appears in the statutes or has been promulgated as policy by rule,

described in pre-decisional criteria adopted by rule, or is shown by the internal reasoning of the order to advance the statutory purpose.

### Statute

Neither ORS 472.030 which states the purpose of the liquor-by-the-drink statutes, nor ORS 472.110 which defines Class "A" distributor licenses, nor ORS 472.180 which lists the grounds for denial of licenses, states a statutory policy regarding family dining or entertainment and the order does not purport to rely on statutes.

### Rule

In *McCann* we stated:

"* * * We have held that the Administrative Procedures Act, ORS ch 183, requires that administrative agencies operating under the broad grants of power establish standards for official action for the purpose, among others, of consistency of application. One reason for that requirement, we observed in *Sun Ray Dairy v. OLCC,* 16 Or App 63, 71, 517 P2d 289 (1973) *(Sun Ray I),* is that an applicant is 'entitled to even treatment by rule of law and reasonable confidence that he has received such treatment.' *See also Graham v. OLCC,* 25 Or App 759, 763, 551 P2d 112, *rev den* (1976) *(Graham II)* (dissent of Thornton, J.)" 27 Or App at 492-3.

No OLCC rule states a standard for official action for consistent application, *i.e.,* a policy, regarding family dining. Common experience and observation of the existing variety of licensed premises makes clear that if any such policy exists, it is not only unwritten, but unevenly applied, a condition we spoke to in *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). We do not say that such a policy promulgated by rule would be invalid; only that there is no such rule to support this order.

### Criteria

In *McCann* we next held:

"Absolute consistency cannot be expected of an agency with as broad a delegation and complex a task as the

OLCC, but procedures should work toward that end. Thus we recognized in *Sun Ray Drive-in Dairy v. OLCC,* 20 Or App 91, 95, 530 P2d 887 (1975) *(Sun Ray II),* that where standards cannot by their nature be precisely defined in advance of their application, the 'Commission must have certain latitude in applying these criteria to conflicting interests.' So many variables exist, that we have declined to require mathematical precision, so long as the agency provides notice to applicants and others of the criteria upon which what are often judgment calls are to be made and we have declined to review the Oregon Liquor Control Commission's decision for mere disagreement with the manner in which criteria were applied. *Graham v. OLCC,* 25 Or App 759, 551 P2d 112, *rev den* (1976) *(Graham II)."*

No criteria have been adopted which speak to a policy of exclusion of entertainment and promotion of family dining. The three rules which the Commission expressly considered in arriving at its conclusions give no hint that entertainment or family dining are decisional factors. Those rules, in their entirety, provide:

OAR 845-10-720. "Enterprise criteria to be considered are:

"* * * * *

"(2) The facilities for food preparation and the type of food to be offered if food service is a requirement for the subject liquor outlet.

"(3) The size, design, facilities, and decor of the subject liquor outlet.

"* * * * *."

and

OAR 845-10-715. "Community Criteria to be considered are:

"* * * * *

"(10) The quota of liquor licenses established by law."

By any definition, a criterion is a factor which guides a decision one way or the other. In the context of administrative procedure, a criterion should guide a decision toward the effectuation of a policy which

advances a statutory purpose. These criteria do not purport to provide such guidance. As we held in *Cottrell v. OLCC,* 27 Or App at 534-35, regarding subsection (3) of OAR 845-10-720:

"* * * The regulation itself provides no guidance for application. Any 'given size,' for example, may be too small for one purpose, too large for another, and just right for yet another. No evaluation based upon the criteria of 'size, design, facilities and decor' can be made *without resort to the purpose which is to be achieved by the application of such general criteria.* * * *."

The same can be said of subsection (2): Neutral reference to the kitchen and menu informs nobody what sort of kitchen or menu are decisionally meaningful.

The purported criteria may be a useful agenda for investigation, hearing and the order, but they are not criteria. Therefore, they are insufficient to serve by reference as a rational basis for an opinion which is not based on internal reasoning. They may give order to the internal reasoning, but are insufficient to substitute for it.

Internal Reasoning

Next in the logical progression of *McCann* we held:

"Where the adoption of precise pre-decisional criteria would be unfeasible, we have required instead that an agency demonstrate in its order a rational relationship between the facts and the legal conclusions upon which it acts in each case. As we stated in *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190-191, 530 P2d 862 (1975):

'If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely state what it found to be the facts and fully explain why those facts lead it to

the decision it makes. Brevity is not always a virtue. The less circumscribed an agency is by the legislative grant of power to it and by its own regulations augmenting that grant, the more detailed and precise its explanation of its action exercising the powers granted to it must be. Few, if any, Oregon agencies operate under statutes or regulations that are less specific than those governing the Oregon Liquor Control Commission.'

"* * * * *

"We recognized in *Home Plate,* [*Battle Creek Golf Course v. OLCC,* 21 Or App 179, 534 P2d 204 (1975)] and [*Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 536 P2d 435 *rev den* (1975)], the difficulty inherent in articulating or systematizing what are sometimes subjective decisions based upon an array of considerations which may not lend themselves to meaningful weighting. Therefore, where decisional factors cannot be set out precisely beforehand, but are set out instead as general criteria, we look to the decision itself for a rational exposition of the facts and the reasoning which leads from the facts to the conclusion. Implicit in those cases is the expectation that we may disagree with the agency's inferences and conclusions, but that we will not overturn them so long as the reasoning is rational, not fallacious. In a sense, *Home Plate* added a *substantial reason* rule to the *substantial evidence* rule." (Original emphasis.)

The order contains no express reasoning to support conclusions of law Nos. 1 and 2. Rather, they rest ultimately on the *a priori,* (*i.e.,* not established by statute, rule or express reasoning) assumption that only food and facilities designed for family dining are demanded by public interest and convenience.

Conclusion No. 3 is based logically on the two preceding conclusions. A policy which restricts the initial granting of limited licenses to establishments intended to serve the general public rather than restricted segments of it has been hitherto applied by the OLCC and upheld by this court. *Oakridge Moose Lodge v. OLCC,* 28 Or App 397, 559 P2d 925 (1977).

Because we have held that the findings and conclusions upon which it is based are partially or entirely unsupported, however, this conclusion is also invalid.

Petitioners ask that we not only invalidate the order, but also require that the OLCC grant their license application. This we cannot do. *Cottrell v. OLCC,* 27 Or App at 536. Rather, we remand for further proceedings, if necessary, and for entry of a lawful order.

Reversed and remanded.