Argued October 29, 1976, reversed and remanded January 24, 1977

CAMPBELL RANCH INC. et al, *Petitioners,*
*v.*
WATER RESOURCES DEPARTMENT, *Respondent.*
(CA 6416)

TAYLOR BROS. FARMS, *Petitioner,*
*v.*
WATER RESOURCES DEPARTMENT OF OREGON,
*Respondent.*
(CA 6417)

FAR-WEST FARMS OREG. LTD., *Petitioner,*
*v.*
WATER RESOURCES DEPARTMENT, *Respondent.*
(CA 6420)
(Cases consolidated)
558 P2d 1295

[ 243 ]

W. F. Schroeder, Vale, argued the cause for petitioners Campbell Ranch, Inc., Stanley Tucker, Lawrence D., Rosella and Corrine Lindsay, Porter-Peringer, Inc., and Larry Hanson; and Taylor Bros. Farms. With him on the brief was Michael J. Sweeney, Heppner.

John T. Lewis, The Dalles, argued the cause for petitioner Far-West Farms Oreg. Ltd., a Limited Partnership. With him on the brief were Lewis & Foster, The Dalles, and Barnes, Laman & Barnes, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

■ This is an appeal from an administrative order that declared about a 270-square-mile portion of northeastern Oregon to be a "critical ground water area" and imposed various restrictions, such as a moratorium on constructing new irrigation wells and limiting removal of water from existing irrigation wells. The dispositive issue is whether the proceedings were initiated with proper notice to persons affected by the restrictions imposed.

The Ground Water Act of 1955 provides that the Water Resources Department may, following a mandatory public hearing, ORS 537.730(2),[1] declare that a critical ground water area exists, ORS 537.730(1),[2]

---

[1]
"The director or his authorized assistant shall hold a public hearing on the question of the determination of a critical ground water area. Written notice of the hearing shall be given to each well driller licensed under ORS 537.770 whose address as shown on his license is within any county in which any part of the area in question is located, and to each person or public agency known to the director from an examination of the records in his office to be a claimant or appropriator of ground water in the area in question. Notice of the hearing shall also be published in at least one issue each week for at least two consecutive weeks in at least one newspaper of general circulation in the area in question. If the area in question is located in whole or in part within the limits of any city, notice of the hearing shall be published in at least one issue each week for at least two consecutive weeks in a newspaper of general circulation published in the city, if any, and written notice of the hearing shall be given to the mayor or chairman of the governing body of the city. Written notices shall be given and the last publication date of published notices shall be at least 30 days prior to the hearing." ORS 537.730(2).

[2]
"In addition to initiation under subsection (3) of ORS 537.620 of a proceeding for the determination of a critical ground water area, the Water Resources Director upon his own motion or, in his discretion, upon receipt of a petition therefor by any ground water claimant or appropriator within the area in question, may also initiate such a proceeding whenever he has reason to believe that:

"(a) Ground water levels in the area in question are declining or have declined excessively; or

"(b) The wells of two or more ground water claimants or appropriators within the area in question interfere substantially with one another; or

"(c) The available ground water supply in the area in question is being or is about to be overdrawn; or

and order corrective measures, ORS 537.735(3).[3] Persons who might be affected by such an order must be notified of the public hearing.

The dispute centers on the manner that should be used to convey notice. The Water Resources Department sent written notice by ordinary mail, and argues that is all that is required. Those challenging the

"(d) The purity of the ground water in the area in question has been or reasonably may be expected to become polluted to an extent contrary to the public welfare, health and safety." ORS 537.730(1).

[3] "The order of the director may include any one or more of the following corrective control provisions:

"(a) A provision closing the critical ground water area to any further appropriation of ground water, in which event the director shall thereafter refuse to accept any application for a permit to appropriate ground water located within such critical area.

"(b) A provision determining the permissible total withdrawal of ground water in the critical area each day, month or year, and, in so far as may be reasonably done, the director shall apportion such permissible total withdrawal among the appropriators holding valid rights to the ground water in the critical area in accordance with the relative dates of priority of such rights.

"(c) A provision according preference, without reference to relative priorities, to withdrawals of ground water in the critical area for domestic and livestock purposes first, and thereafter other beneficial purposes, including agricultural, industrial, municipal other than domestic, and recreational purposes, in such order as the director deems advisable under the circumstances.

"(d) A provision reducing the permissible withdrawal of ground water by any one or more appropriators or wells in the critical area.

"(e) Where two or more wells in the critical area are used by the same appropriator, a provision adjusting the total permissible withdrawal of ground water by such appropriator, or a provision forbidding the use of one or more of such wells completely.

"(f) A provision requiring the abatement, in whole or in part, or the sealing of any well in the critical area responsible for the admission of polluting materials into the ground water supply or responsible for the progressive impairment of the quality of the ground water supply by dispersing polluting materials that have entered the ground water supply previously.

"(g) A provision requiring and specifying a system of rotation of use of ground water in the critical area.

"(h) Any one or more provisions making such additional requirements as are necessary to protect the public welfare, health and safety in accordance with the intent, purposes and requirements of ORS 537.505 to 537.795." ORS 537.735(3).

Department's order argue that registered or certified mail should have been used.

The relevant statutes contain some support for both positions. The Ground Water Act of 1955 states:

"* * * Written notice of the hearing * * * to each person or public agency known to the director [of the Water Resources Department] from an examination of the records in his office to be a claimant or appropriator of ground water in the area in question * * *." ORS 537.730(2).

"* * * [T]he hearing * * * procedure shall be such as to secure a full, fair and orderly proceeding and to permit all relevant evidence to be received." ORS 537.730(3).

These statutes do not require notification by registered or certified mail unless it is implicit in the guarantee of a fair proceeding.

The Water Resources Department is also subject to the Administrative Procedures Act, ORS ch 183, which requires:

"In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, served personally or by registered or certified mail." ORS 183.415(1).

Contested cases include agency proceedings in which individual legal rights are required by statute to be determined only after agency hearing where the individual has a right to be heard and proceedings where the agency has discretion to revoke a right or privilege of a person. ORS 183.310(2)(a) and (b).

The agency proceeding contemplated by the Ground Water Act of 1955 to determine a critical ground water area is a contested case within this meaning because a statute requires a hearing and grants the right to be heard, ORS 537.730(2) and (3), and because the agency has discretion to revoke rights to appropriate water, ORS 537.735(3). Therefore, the Administrative Procedures Act notification rule—registered or certified mail—should have been followed to initiate this proceeding.

Were there a conflict between the procedures of the Ground Water Act and the Administrative Procedures Act, the preference would be to follow the APA to promote uniformity. *See School Dist. No. 48 v. Fair Dis. App. Bd.,* 14 Or App 35, 512 P2d 799 (1973). But here there is no conflict; one statute's requirement (written notice) is merely supplemented by the other statute's requirement (by certified or registered mail). This is an even stronger case for following the APA than is *School Dist. No. 48.*

*Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972), does not support respondent's position. *Stroh* holds that ordinary-mail notice is sufficient, even when a statute requires something more, *when it is conceded the notice was received.* Instead of supporting the Water Resources Department, *Stroh* is actually adverse authority because we have no evidence in this case about whether the ordinary-mail notice was received.

We know from the record that many persons were sent ordinary-mail notice. The record also discloses that many of those same persons did not participate in the hearing. It may be that the nonparticipants received the notice but chose not to attend the hearing, although the stakes were high for farmers irrigating hundreds of acres from thousand-foot-deep wells. But it is equally possible that the nonparticipants never received notice. It is impossible to know.

The final issue is prejudice. All of the petitioners in this court did attend and participate in the hearing that culminated in the order they challenge. Can these petitioners assert the lack of proper notice to persons other than themselves?

In the context of this specific case, we conclude they can. The pattern in the Ground Water Act of 1955 is that all persons who might be affected by restrictions on their appropriation of water should have the opportunity to participate in a hearing to determine a critical ground water area. It is conceivable that other

water appropriators might, if properly notified, have participated and made contributions which might have produced a different administrative decision.

Reversed and remanded.