Argued and submitted February 1, rule held invalid March 20, reconsideration denied
June 7, petition for review allowed July 23, 1985 (299 Or 522)
See 300 Or 78, 706 P2d 944 (1985)

DINSDALE,
*Petitioner,*

*v.*

YOUNG et al,
*Respondents.*

(CA A32510)

697 P2d 196

Robert L. Nash, Bend, argued the cause for petitioner. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner is a farmer in an area known as Fort Rock Basin. In March, 1984, respondent Young, the Director of the Water Resources Department (director), issued a proclamation initiating a proceeding for the determination of a critical ground water area in Fort Rock Basin. ORS 537.730 *et seq.* The proclamation states in part:

"Prior to completion of the proceeding for determination of a critical ground water area, no application for a permit to appropriate water from the Main Ground Water Reservoir will be approved or denied."

The director's stated authority for that moratorium on the processing of applications is a rule, codified at OAR 690-10-050, which provides in pertinent part:

"(1)   A proceeding for the determination of a critical ground water area shall be initiated by a Proclamation of the Water Resources Director.

"(2)   The Proclamation shall include:

"* * * * *

"(e)   A statement that no application for a permit to appropriate water from the ground water reservoir in question will be approved or denied prior to completion of the proceeding for determination of a critical ground water area.

"* * * * *"

Petitioner had filed an application for a groundwater appropriation permit, and the application was awaiting action at the time when the director issued the proclamation. Petitioner seeks review of the director's moratorium on the processing of applications. He argues that the director had no authority to declare the moratorium in the proclamation and that OAR 690-10-050 is contrary to statute and is invalid insofar as it purports to authorize the moratorium.[1]

■      Although petitioner's *argument* clearly challenges the rule as well as the proclamation, it is not as clear whether his

---

[1] Petitioner and others also brought a mandamus action to compel the director "to complete the issuance of plaintiffs' water permit applications in accordance with law." The trial court granted the defendants' motion to dismiss that action. Petitioner's separate appeal from the dismissal of the mandamus action is the subject of our opinion in *Dinsdale v. Young,* 72 Or App 778, 697 P2d 200 (1985).

*petition* invokes our jurisdiction to review the rule under ORS 183.400[2] or is directed solely at the proclamation. Petitioner contends that this court has jurisdiction to review the proclamation, but he is incorrect. The proclamation is neither a rule that is reviewable under ORS 183.400, *see* ORS 183.310(8), nor a final order in a contested case that is reviewable under ORS 183.482. *See* ORS 183.310(5)(b), 183.470. The proclamation simply *initiates* a contested case proceeding. *See* ORS 537.730 *et seq; Campbell Ranch v. Water Resources Dept.,* 28 Or App 243, 558 P2d 1295 (1977).

■ It follows that we have jurisdiction to consider petitioner's argument only if the petition can be construed as challenging the validity of OAR 690-10-050(2)(e). A copy of the rule is appended to the petition, and a reference to the rule appears in the body of the petition (albeit only to note that the copy is appended). The petition states as one of the points on which petitioner relies that the "moratorium on groundwater permits is invalid because * * * [t]here is no statutory authority for such a moratorium." That legal proposition necessarily puts in issue the validity of the requirement of subsection (2)(e) of the rule that is attached to the petition. We hold that petitioner has succeeded—although not by a comfortable margin—in invoking our jurisdiction, but only to consider the validity of OAR 690-10-050(2)(e).[3] *Compare Ensley v. Fitzwater,* 293 Or 158, 645 P2d 1062 (1982); *see also Street v. Gibson,* 295 Or 112, 663 P2d 769 (1983).

■ Petitioner's principal basis for arguing that the rule is invalid is that ORS 537.735 provides that the director may prescribe corrective measures only *after* the contested case procedures outlined in ORS 537.730 are completed and he has declared the "area in question to be a critical ground water area." Among the specific corrective measures the director is authorized to take at the conclusion of the proceedings is to close

---

[2] ORS 183.400(1) provides in part that

"[t]he validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. * * *"

*See also* ORAP 5.10. The *form* of the petition here is sufficient under ORS 183.400.

[3] Petitioner has not sought mandatory relief under ORS 183.490.

"* * * the critical ground water area to any further appro-
priation of ground water, in which event the director shall
thereafter *refuse to accept any application for a permit to
appropriate ground water located within such critical area.*"
ORS 537.735(4)(a). (Emphasis supplied.)

Petitioner argues that OAR 690-10-050(2)(e) purports to
require the director to do, at the time he initiates critical
ground water area determination proceedings, effectively the
same thing that the statute authorizes him to do only at the
conclusion of the proceedings.

Respondents make four points in reply. First, they
argue that

"* * * ORS 537.735 only states that, once a critical ground
water area is determined to exist, then the director of the
Water Resources Department can refuse to even *accept* a
permit application as a corrective control.

"Nothing in ORS 537.735 precludes the director of the
Water Resources Department from holding the *processing* (as
opposed to the acceptance) of permit applications * * *."
(Emphasis respondents'; footnote omitted.)

They argue, second, that ORS 537.620(3) affirma-
tively provides the director with authority to suspend the
processing of permit applications while critical ground water
area determination proceedings are pending. That statute,
with respondents' emphasis added, provides:

"*When an application discloses the probability of wasteful
use or undue interference* with existing wells or that any
proposed use or well will impair or substantially interfere with
existing rights to appropriate surface water by others, *the
director may* impose conditions or limitations in the permit to
prevent the same or reject the same after hearing, or, *in the
director's discretion, initiate a proceeding for the determina-
tion of a critical ground water area* under ORS 537.730 to
537.740."

Respondents' third point is that "no statutory provi-
sion in ORS Ch. 537 sets forth any timeline within which
ground water appropriation permit applications must be pro-
cessed." Their final point is that

"* * * it is only logical that actions to approve or deny
ground water appropriation permit applications should be
held in abeyance when the director of the Water Resources

Department determines that a critical ground water area proceeding should be initiated." (Footnote omitted.)

Respondents' strongest point is their first. It is correct that the challenged rule relates to the processing of applications that have already been received, and ORS 537.735(4)(a) addresses the director's post-hearing authority to refuse to accept applications for permits in an affected area. However, their point may hurt respondents more than it aids them. If the statute does not authorize the director to refuse to accept applications until the hearing process is concluded, it does not logically follow that he may refuse to process the applications he is required to accept between the time when a proceeding is initiated and the time when it is completed. In any event, it is somewhat beside the point whether there is a specific statutory prohibition of the specific prehearing measure that the rule purports to require; the more serious problem with the rule is that ORS 537.735(4) plainly contemplates that *all* remedial measures relating to the creation and enjoyment of water rights in critical ground water areas must await the conclusion of the contested case procedures under ORS 537.730.[4] We are not persuaded by respondents' first argument.

---

[4] ORS 537.735(4) provides:

"The order of the director may include any one or more of the following corrective control provisions:

"(a) A provision closing the critical ground water area to any further appropriation of ground water, in which event the director shall thereafter refuse to accept any application for a permit to appropriate ground water located within such critical area.

"(b) A provision determining the permissible total withdrawal of ground water in the critical area each day, month or year, and, in so far as may be reasonably done, the director shall apportion such permissible total withdrawal among the appropriators holding valid rights to the ground water in the critical area in accordance with the relative dates of priority of such rights.

"(c) A provision according preference, without reference to relative priorities, to withdrawals of ground water in the critical area for residential and livestock watering purposes first. Thereafter the director may authorize withdrawals of ground water in the critical area for other beneficial purposes, including agricultural, industrial, municipal other than residential, and recreational purposes, in such order as the director deems advisable under the circumstances, so long as such withdrawal will not materially affect a properly designed and operating well with prior rights that penetrates the aquifer.

"(d) A provision reducing the permissible withdrawal of ground water by any one or more appropriators or wells in the critical area.

We also find their second point to be unpersuasive. ORS 537.620(3) authorizes the director to "impose conditions or limitations in the permit * * * or reject the same after hearing." It does not allow the director to refuse to process applications or to reject them without a hearing. ORS 537.620(3) also authorizes the director to "initiate a proceeding for the determination of a critical ground water area *under ORS 537.730 to 537.740.*" (Emphasis supplied.) However, it does not authorize the director to do anything at the initiation stage that ORS 537.730 to 537.740 permit him to do only at the post-hearing stage.[5]

Respondents' third argument begs the question. Whether or not ORS chapter 537 imposes time requirements on the processing of applications, it does not authorize the director to select particular applications or categories of applications for inaction. It also does not authorize the director to promulgate a rule suspending the processing of certain applications when the suspension itself—as distinct from the resulting failure to process applications—is contrary to statute.

Respondents' final argument is that, given the overall objectives of the critical ground water area determination process, it makes sense that the director should be able to do what OAR 690-10-050(2)(e) prescribes. Whether or not respondents are correct is for the legislature to decide. We

---

"(e)  Where two or more wells in the critical area are used by the same appropriator, a provision adjusting the total permissible withdrawal of ground water by such appropriator, or a provision forbidding the use of one or more of such wells completely.

"(f)  A provision requiring the abatement, in whole or in part, or the sealing of any well in the critical area responsible for the admission of polluting materials into the ground water supply or responsible for the progressive impairment of the quality of the ground water supply by dispersing polluting materials that have entered the ground water supply previously.

"(g)  A provision requiring and specifying a system of rotation of use of ground water in the critical area.

"(h)  Any one or more provisions making such additional requirements as are necessary to protect the public welfare, health and safety in accordance with the intent, purposes and requirements of ORS 537.505 to 537.795."

[5] The determination proceeding here was initiated under ORS 537.730, not ORS 537.620.

hold that OAR 690-10-050(2)(e) exceeds the statutory authority of the agency, ORS 183.400(4)(b), and that it is invalid.

OAR 690-10-050(2)(e) held invalid.