No. 248 April 1, 2026 167

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

BILL BABECKOS TRUST,
*Petitioner,*

*v.*

DEPARTMENT OF STATE LANDS,
*Respondent.*

Department of State Lands
10159ML;
A182851

Submitted April 29, 2025.

Michael J. Kavanaugh filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

Petitioner, Bill Babeckos Trust (the trust), has requested judicial review of a final order issued by the Oregon Department of State Lands (DSL) on August 31, 2023, affirming the termination of waterway lease 10159-ML between the trust and DSL. Petitioner raises seven assignments of error. As explained below, we reject petitioner's first through third, sixth, and seventh assignments of error and consequently affirm the final order's determination that termination of the lease was warranted and that proper notice of the contested case hearing was provided to all individuals who were required to receive such notice. However, on the fourth and fifth assignments, we reverse and remand for DSL to bring the final order's instructions into accordance with the terms of sections 7 and 3.6 of the lease agreement.

When reviewing a final order in a contested case, we are limited to the record and may not substitute our own judgment for that of the agency as to any issue of fact or exercise of discretion. ORS 183.482(7). We review DSL's application of the law for legal error. ORS 183.482(8)(a). We review findings of fact for substantial evidence in the record to support those findings. ORS 183.482(8)(c).

*Bases for Termination.* In its first three assignments of error, the trust argues that the lease was improperly terminated because (1) some of the cited city code violations were the responsibility of moorage tenants and other occupants and not the responsibility of the trust; (2) DSL lacked the authority under the lease agreement to require the trust to provide a list of all structures and vessels located in the leasehold and thus could not terminate the lease based on its failure to provide such a list; and (3) the requirement that the trust repair or demolish a retaining wall within the leasehold was improper because the retaining wall was not a "dangerous structure" in its current condition. DSL had authority under section 7.1.2 of the lease agreement to terminate the lease for "[f]ailure *** to comply with any non-payment-related term or condition or obligation of the Lease within 30 days after Notice by the State specifying the nature of the deficiency[.]" Therefore, if DSL correctly

affirmed the termination of the lease for any of the three reasons identified in the trust's first three assignments of error, we need not reach the remaining two to determine that the lease was properly terminated.

We begin with the third assignment of error. Section 3.2.1 of the lease required the trust to "comply with all applicable local, state[,] and federal laws and regulations affecting the Leasehold and its use[.]" In the final order, DSL determined that, while the trust took some actions related to the retaining wall, it did not take the actions that were required by the notice of default within the time provided and that DSL had not extended the deadline under section 7.1.2 of the lease.

On review, the trust contends that DSL erred in concluding that it could terminate the lease based on the retaining wall violation. It argues that DSL failed to prove that the retaining wall was dangerous, and the trust relies on the testimony of its own structural engineer that the retaining wall was stable and not an immediate danger to life or safety.

Contrary to the trust's view, the record supports DSL's finding that the retaining wall's condition violated the Portland City Code sections 29.40.020.C and 29.40.020.K.2. The city cited the trust for the violation, and the trust had the opportunity to, and did, challenge that determination. The city's hearings officer resolved the issue against the trust. While the trust's structural engineer opines that the retaining wall is stable and not an immediate danger to life or safety, DSL was not required to accept the trust's engineer's opinion, and substantial evidence supports DSL's finding that the retaining wall was a dangerous structure in violation of Portland City Code. At the time of the final order, the trust had still not arranged for the demolition or repair of the retaining wall as required by the default notice. In sum, DSL did not err in affirming the termination of the lease on the ground that the condition of the retaining wall was a violation of the city code—in the lease's terms, a "local *** regulation"—and the trust failed to timely correct the violation as required by the notice of default. In light of that

conclusion on the third assignment of error, we need not address the first or second assignment.

*Adequacy of Notice.* We move now to the trust's sixth assignment of error. The trust argues that DSL erred in holding that it gave adequate notice to the trust under ORS 183.415 because it failed to cite to all applicable sections of the Portland City Code, the Oregon Revised Statutes, and the Oregon Administrative Rules. The purpose of the notice requirement under the Oregon Administrative Procedures Act (OAPA) is to notify the affected party of substantially relevant statutes and rules, as well as those violated, and to provide enough factual information to allow parties to reasonably understand the allegations against them and prepare an adequate defense. *Villanueva v. Board of Psychologist Examiners*, 175 Or App 345, 356, 27 P3d 1100 (2002); *Sachdev v. Oregon Medical Board*, 292 Or App 778, 785, 426 P3d 118 (2018).

DSL found that the default notice provided ample description of the ways in which the trust was in default of its obligations under the lease, including reference to the relevant sections of the lease, the relevant parts of the city code, state statutes, and administrative rules that were implicated in the alleged violations of section 3.2.1 of the lease, and appended images of particular defects. Further, the default notice provided descriptions of specific actions the trust was required to take to cure the violations and avoid termination of the lease. DSL also found that the trust fully understood what actions were necessary on its part and that ORS 183.415(3)(d) was satisfied. We agree with those determinations and conclude that DSL did not err in determining that the trust received notice sufficient to allow it to understand the department's allegations and bases for proposed lease termination and to prepare an adequate defense to the proposed termination at the contested case hearing.

*Requirements upon Termination.* In its fourth assignment of error, the trust argues that, upon termination of the lease, DSL erred in requiring the trust to remove vessels from the leasehold because the lease does not provide for the removal of vessels. Rather, it asserts, the lease provides only for the removal of "authorized improvements"

at termination. In its fifth assignment of error, the trust contends, based on the same lease language, that DSL erred in requiring the trust to remove all its improvements and structures, rather than only authorized improvements, from within the leasehold.

In response, DSL does not dispute that the only category of items for which the lease provides for removal is "authorized improvements." Its only argument on the fourth and fifth assignments is that the final order, which it views as ordering only the removal of vessels, improvements, and structures owned by the trust, does not adversely affect or aggrieve the trust because, it contends, the trust owns no vessels, improvements, or structures within the leasehold. Therefore, DSL argues, we should reject the fourth and fifth assignments of error.

We begin with the fifth assignment of error, regarding improvements. Under section 7.2 of the lease, upon termination, the trust is required to remove only any "authorized improvements" described in section 3.6. We agree with the trust that DSL erred in ordering the trust to remove all "its improvements [and] structures."[1] DSL contends that the trust was not adversely affected or aggrieved by the error because there is no evidence that the trust owns any improvements or structures within the leasehold. We disagree that a lack of evidence on that topic shows that the error did not affect the trust. Because the requirement to remove "its improvements" did not appear until the final order, the trust had no reason to present evidence or argument as to its ownership of any improvements or structures on the leasehold. Consequently, we decline to infer from the

---

[1] The trust requests plain error review of the fifth assignment, noting that the director's notice required the trust to remove all structures and improvements and that the trust did not challenge that command in the contested case hearing. DSL responds that, because the requirement that the trust remove "its improvements and structures" appeared for the first time in the final order, preservation is waived as to the trust's argument that that narrower command was not authorized by the lease. We agree that no preservation was required to challenge the statement that appeared for the first time in the final order. The same principle excuses administrative exhaustion of the issue. *See Ayres v. Board of Parole*, 194 Or App 429, 439, 97 P3d 1 (2004) ("[T]he exhaustion doctrine implies not only the existence of an administrative procedure to exhaust but also its 'availability' to the persons who must pursue it." (Quoting *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 618, 581 P2d 50 (1978).)).

lack of such evidence that no improvements or structures belonging to the trust exist. On remand, DSL must bring the part of the order requiring the trust to remove structures and improvements into accordance with the terms of section 7 and 3.6 of the lease agreement.

Turning to the fourth assignment of error, regarding vessels, again, section 7.2 requires the trust only to remove any "authorized improvements" described in section 3.6 upon termination. The lease does not require the trust to remove vessels. DSL therefore erred in including in its final order a requirement to remove vessels. As to DSL's argument that the trust was not adversely affected or aggrieved by that error, it is true that the final order requires the trust only to remove "its" vessels, unlike the director's notice that required removal of "all" vessels, and that it is undisputed that the trust has no vessels of its own to remove. However, given that we are already remanding for a correction to the order, it makes little sense to leave erroneous language on a harmlessness theory. On remand, DSL is to bring its final order affirming the termination of the lease into accordance with the terms of section 7 and 3.6 of the lease agreement, both as to improvements and as to vessels.

*Notice to Others.* In its seventh assignment of error, the trust argues that DSL erred in ruling that it was not required to give notice of the contested case hearing to moorage tenants and the owners of vessels that remain within the leasehold. We do not understand the trust to contend that, as a categorical matter, anyone who subleases or uses leased property has a right to notice in a contested case concerning the lease. Rather, we understand its argument to be that, in this contested case proceeding, the tenants were entitled to notice because their rights were directly at issue. That is so, the trust contends, because some of the building code violations that the notice of default required the trust to correct related to tenant-owned property and because the director's notice contained a provision requiring the trust to remove all vessels and improvements, some of which belonged to tenants.

The trust cites *Campbell Ranch v. Water Resources Dept.*, 28 Or App 243, 247, 558 P2d 1295 (1977) for the

proposition that, in contested cases under the OAPA, "where the agency has discretion to revoke a right or a privilege of a person," it must notify the person. We agree that *Campbell Ranch* correctly states the law in that regard. *See* ORS 183.310(2)(a)(B) (a contested case includes any agency proceeding "[w]here the agency has discretion to suspend or revoke a right or privilege of a person"); ORS 183.415(2) ("In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice[.]"); ORS 183.310(7)(a) (defining "party" to include those who are "entitled as of right to a hearing"); *Oregon Env. Council v. Oregon State Bd. of Ed.*, 307 Or 30, 43, 761 P2d 1322 (1988) (holding that a person or entity is entitled to a hearing when that right is provided by a statute or a constitution).

To the extent that the trust also understands *Campbell Ranch* to establish a requirement for notice to a class of people broader than those required to be notified under the OAPA, *see id.* at 246-47 (in that case, "persons who might be affected" by the agency action at issue were entitled to notice), we disagree. In *Campbell Ranch*, we explained that persons who might be affected by the agency action were entitled to notice under ORS 537.730(1) (1977), *amended by* Or Laws 1999, ch 400, a provision of the Ground Water Act of 1955, which required written notice to "each well driller [in any affected county]" and to "each person or public agency known to the director from an examination of the records in his office to be a claimant or appropriator of ground water in the area in question," as well as notice to the general public by publication. *Campbell Ranch*, 28 Or App at 245 n 1. When we described the required notice as being to persons who might be affected by the agency's order, *i.e.*, those with water rights that might be affected, we were describing what was required under ORS 537.730(1) (1977), not what was required under the APA. *Id.* at 246.

Turning to the trust's contention that the tenants were entitled to notice because their rights were directly at issue, we conclude that these proceedings have not directly implicated the tenants' interests. That is so because, as we held with respect to the trust's third assignment of error, the ground on which we conclude that DSL was entitled

to terminate the lease was the violation of Portland City Code sections 29.40.020.C and 29.40.020.K.2, due to the condition of the retaining wall, which was not the property of any tenant. And our disposition on the trust's fourth and fifth assignments of error, which require DSL to limit its removal order to items permitted by the lease, ensure that no tenant's property rights will be directly affected by the final order.

To reiterate, we affirm the final order's determination that termination of the lease was warranted and that proper notice of the contested case hearing was provided to all individuals who were required to receive such notice. However, on the fourth and fifth assignments of error, we reverse and remand for DSL to bring the final order's instructions into accordance with the terms of sections 7 and 3.6 of the lease agreement.

Reversed and remanded.